UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES, INC.,  : | | |
|     Plaintiff, : | | |
| : | | |
| -vs- : | Civil No. 3:05cv250 (PCD) | |
| : | | |
| Suresh AGRAWAL, : | | |
|     Defendant. : | | |

**<u>RULING ON FIRST AMENDED PETITION TO COMPEL ARBITRATION</u>**

Plaintiff Doctor's Associates, Inc. ("DAI"), moves [Doc. Nos. 1, 24] to compel arbitration against Defendant Suresh Agrawal. Plaintiff also moves [Doc. No. 4] for a preliminary injunction enjoining Defendant from prosecuting claims against DAI in two actions currently pending in the Ninth Judicial District for Rapides Parish, Louisiana, and from pursuing any other claims that arise out of or relate to his franchise agreements with DAI. Defendant moves [Doc. No. 27] to dismiss Plaintiff's First Amended Petition to Compel Arbitration compel arbitration pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (2005) [Doc. No. 24]. For the reasons that follow, Plaintiff's petition to compel arbitration [Doc. No. 1] and motion for preliminary injunction [Doc. No. 4] are **granted**. Defendant's motion to dismiss [Doc. No. 27] is **denied**.

**I.     Background**

Plaintiff is the national franchisor of "Subway" sandwich shops and is a Florida Corporation with its principal place of business in Fort Lauderdale, Florida. Plaintiff was a Connecticut corporation with its principal place of business in Milford, Connecticut, and its

administrative affiliate still maintains offices in Milford, Connecticut. Defendant is a Texas resident. On or about August 5, 2003, Plaintiff and Defendant entered into three written franchise agreements ("the Agreements"), permitting Defendant to operate Subway stores in the state of Louisiana. The Agreements contain a dispute resolution clause that provides, in relevant part: "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration." [The Agreement ¶ 10 (a).]

On or about March 2, 2004, Defendant filed in the Ninth Judicial District Court for Rapides Parish, Louisiana a complaint against DAI, its agents and affiliates ("the 2004 Complaint"). On or about October 13, 2004, Agrawal filed an Amended Petition, in which he alleged that DAI: (1) or an agent of DAI fraudulently informed him that there were no development opportunities when, in fact, DAI had approved site locations for four new Subway locations that would be within a five minute drive of one another and would interfere with Petitioner's sales at his present locations; (2) engaged in unfair trade practices by conspiring to drive him out of the market; (3) interfered with the contractual relationship between him and his employees by inviting his employees to quit working for Agrawal and instead work for the agent; (4) has been unjustly enriched by benefitting from the work done by Agrawal and his ancestors in title; (5) has been and will continue to be unjustly enriched by Agrawal's work in that market; (6) caused him to detrimentally rely on assurances given at the time of his purchase that there would be no new development for at least one year and that he would be given an opportunity to acquire new business opportunities in the Alexandria market; (7) discriminated against him in violation of 42 U.S.C. § 1981 by precluding him from participating in additional contracting opportunities made available by Subway; (8) breached the franchise agreement by violating Agrawal's state or

federal rights; (9) has engaged in unfair trade practices by imposing upon its franchisees an obligation to pay a portion of the fees of Development Agents and then allowing these Development Agents to act in their own interest and not in the collective interest of DAI and the franchisees; and (10) has abused his rights by contending that it need not consider Agrawal for additional expansion opportunities that would otherwise harm him.

On December 3, 2005, Defendant filed in the Ninth Judicial District Court for Rapides Parish, Louisiana (the "2005 Complaint") an additional lawsuit against DAI, naming one of its affiliates and an individual as additional defendants.  In the 2005 Complaint, which contains six counts, Agrawal alleges breach of contract, detrimental reliance, negligent misrepresentation, fraud, unfair trade practices, and seeks injunctive relief.  The breach of contract claim (Count One) stems from Agrawal's notification of Subway's intent to open a Wal Mart Subway (the "Pineville location.") close to his existing Subway store, and his alleged acceptance of an oral offer of right of first refusal to operate that store as well.  Agrawal claims that he detrimentally relied upon the right of first refusal (Count Two), and that DAI negligently misrepresented to him that he would be entitled to develop the Pineville location without disclosing to him in advance that the opportunity was conditioned upon his relinquishing his right to continue pursuing a pending arbitration (Count Three).   Defendant also alleges that DAI fraudulently suppressed information from him regarding the feasibility of the Pineville location to gain leverage in their attempt to have Agrawal relinquish his pursuit of the claims in arbitration, and that this conduct constituted an unfair trade practice.  Finally, Agrawal seeks an injunction restraining DAI from proceeding to develop the Pineville location.

**II.     Discussion**

Federal arbitration policy views arbitration agreements as contracts that are enforceable in the same manner as any other contract. <u>Collins & Aikman Prods. Co. v. Building Systems</u>, 58 F.3d 16, 19 (2d Cir. 1995).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  <u>Id.</u>   The Court looks first to the franchise agreement to determine whether the arbitration agreement is broad or narrow.  Claims are presumed arbitrable when the arbitration agreement is broad.  The Court's focus is not on the characterization of the causes of action in the pleading, but rather on the conduct alleged and whether or not that conduct is within the scope of the arbitration agreement.

> In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the legal causes of action asserted.  If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them.

<u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 846 (2d Cir. 1987) (internal citations omitted).

The Agreements in this case contain a dispute resolution clause that provides, in relevant part: "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration." [The Agreement ¶ 10 (a).]  The Second Circuit has concluded that this language is "the paradigm of a broad clause."  <u>See</u> <u>Threlkeld</u>, 923 F.2d at 251.  Accordingly, with a presumption that the claims are arbitrable, the Court turns to the allegations in the complaint to determine whether Agrawal's claims arise out of or are related to the arbitration clause contained in the franchise agreements.

Defendant argues that Plaintiff's Petition fails to state a claim upon which relief may be

granted because his claims in the Louisiana court do not arise out of or relate to any arbitration agreement. He also asserts that the Court lacks personal jurisdiction over him because Plaintiff failed to serve him with a summons or complaint, either through the mail or personally, in violation of Connecticut's Long Arm Statute and that, in any event, he lacks sufficient contacts with the state of Connecticut to reasonably anticipate being haled into court here. These arguments are addressed in turn.

**A.    Arbitrability**

**i.    The 2004 Complaint**

    **Count One**

In Count One, Agrawal alleges that DAI fraudulently informed him that there were no local development opportunities when, in fact, there were. This claim relates to the arbitration agreement, as Defendant would not have been privy to that information unless he owned the Pineville location and had entered into a franchise agreement with Subway. Furthermore, DAI argues that it will look to the language of the agreement in support of its position that it was under no obligation to provide him with notice of additional franchise locations proposed in his market area or the opportunity to purchase those franchises. Accordingly, this claim is arbitrable.

**Count Two**

Defendant alleges that DAI engaged in unfair trade practices by positioning four stores within a five minute drive of one another and thereby conspiring to drive him out of the market. He also alleges that DAI is unlawfully using racial classifications to prevent him from acquiring the new franchises. DAI argues that it will look to the terms of the franchise agreement in support of its position that Agrawal is not entitled to any protected territory. The Court

concludes that this claim relates to the arbitration clause because it touches upon DAI's express disclaimer of protected territory in the Agreement.

**Count Three**

Defendant alleges that an agent of DAI interfered with the contractual relationship between him and his employees by inviting his employees to quit working for Agrawal and instead work for the agent.  The franchise agreement sets forth the responsibilities that Plaintiff's agents will have related to Defendant's franchise operation, including permitting the agents to interview the restaurant's employees and customers.  Although the Court is uncertain at this point in the case as to what defense Plaintiff may have to Defendant's claims, the Court concludes that this claim should be referred to arbitration because it relates to the conduct of DAI's development agents, which touches upon matters covered in the Agreement.

**Counts Four and Five**

Defendant alleges that Subway has been unjustly enriched by benefitting from the work done by Defendant and his ancestors in title (Count Four), and that DAI has been and will continue to be unjustly enriched by his work in that market (Count Five).  Both claims relate to the Agreement as they pertain to Defendant's operation of the franchise and the revenue generated therefrom, both of which are expressly addressed the Agreement.  Accordingly, these matters are arbitrable.

**Count Six**

Defendant argues that DAI caused him to detrimentally rely on assurances given at the time of his purchase that there would be no new development for at least one year and that he would be given an opportunity to acquire new business opportunities in the Alexandria market.

The Court concludes that this claim relates to the arbitration clause because development of additional franchises near Defendant's existing franchise relates to DAI's express disclaimer of territorial rights in the franchise agreement.

**Count Seven**

Defendant argues that DAI discriminated against him in violation of 42 U.S.C. § 1981 by precluding him from participating in additional contracting opportunities made available by Subway, and that such a claim is outside the scope of the arbitration agreements because it presents a question regarding the rights and obligations of the parties under federal law. The Court is unpersauded, as the United States Supreme Court has concluded that the federal policy in favor of arbitration extends to claims under federal statutes. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991) (applying presumption of arbitrability to claims of discrimination under the Age Discrimination in Employment Act); Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 364-65 (7th Cir. 1999) (concluding that Congress did not intend for Title VII of the Civil Rights Act to prohibit the enforcement of arbitration agreement); Maye v. Smith Barney, Inc., 897 F. Supp. 100, 109-10 (S.D.N.Y 1995) (compelling arbitration of claims brought pursuant to Title VII and the Civil Rights Act of 1991).

The question is therefore whether Agrawal's claims arise out of or are related to the arbitration clause contained in the franchise agreements. Agrawal argues that the verbal right of first refusal did not ripen into a franchise agreement or, a fortiori, an arbitration clause. Agrawal also points to the language of the franchise agreements, which expressly deny any right to future development opportunities. DAI counters that it will rely upon the language contained in the

franchise agreements to dispute any claim of encroachment. The Court concludes that this claim is arbitrable, as it relates to DAI's express disclaimer in the agreements that it has an unlimited right to compete with the franchisee and to license others to do so.

**Count Eight**

Agrawal alleges in Count Eight that DAI breached the franchise agreement by violating his state or federal rights. The alleged breach of the franchise agreement is clearly arbitrable as it relates to the entire document.

**Count Nine**

Agrawal alleges that DAI has engaged in unfair trade practices by imposing upon its franchisees an obligation to pay a portion of the fees of Development Agents, and then allowing these Development Agents to act in their own interest and not in the collective interest of DAI and the franchisees. This claim is arbitrable because the agreements contain specific provisions regarding franchise fees and royalties.

**Count Ten**

Agrawal alleges that DAI has abused his rights by contending that it need not consider Agrawal for additional expansion opportunities that would otherwise harm him. This claim is arbitrable because it relates to the provision in the franchise agreement that permits DAI to compete, or license others to compete, with a franchise, and does not provide for a right of first refusal for additional locations.

ii.     **The 2005 Complaint**

In the 2005 Complaint, which contains six counts, Agrawal alleges breach of contract, detrimental reliance, negligent misrepresentation, fraud, unfair trade practices, and seeks

injunctive relief.  The breach of contract claim (Count One) stems from Agrawal's notification of Subway's intent to open the Pineville location close to his existing Subway store, and his alleged acceptance of an oral offer of right of first refusal to operate that store as well.  Agrawal claims that he detrimentally relied upon the right of first refusal (Count Two), and that DAI negligently misrepresented to him that he would be entitled to develop the Pineville location without disclosing to him in advance that the opportunity was conditioned upon his relinquishing his right to pursue other claims currently pending in arbitration (Count Three).
Agrawal also alleged that DAI fraudulently suppressed disseminating information to him regarding the feasibility of the Pineville location to gain leverage in their attempt to have Agrawal relinquish his pursuit of the claims in arbitration (Count Four), and that this conduct constituted an unfair trade practice (Count Five).

  Agrawal argues that his oral acceptance of the right of first refusal never resulted in a franchise agreement for that proposed location and that these claims are therefore not subject to the arbitration clauses contained in the other franchise agreements.  Here, however, as with the claims alleged in the 2004 Complaint, the claims relate to the franchise agreement and are therefore subject to arbitration, because the terms of the franchise agreement will need to be examined to determine whether DAI's disclaimer of the right of first refusal in any way negates Agrawal's allegation that he orally accepted such an offer.  Although Defendant alleges that the right of first refusal was formed after the agreements in this case, it is unlikely that DAI would have approached Agrawal regarding the operation of the Pineville location if he was not already a franchise owner.  In fact, as Agrawal alleges in his 2005 Complaint, DAI informed him that "[t]he committee reviewed the file and . . . they decided first right of refusal to the closest

9

franchisee was the appropriate decision." Furthermore, Agrawal seeks injunctive relief through the 2005 Complaint, in an attempt to prevent the Pineville location from proceeding, and to preserve the health of his Pineville store, which is governed by the terms of the franchise agreement. Finally, Agrawal's allegation that DAI conditioned its offer of first refusal as a means of eliminating issues that the parties were currently arbitrating relates to the arbitration clauses in those franchise agreements. Therefore any dispute regarding those proceedings no doubt relates to the arbitration agreement underlying the claims.

**B.      Personal Jurisdiction**

Defendant also contends that the court lacks jurisdiction over him because Plaintiff failed to properly serve him with the petition. Plaintiff does not dispute that it never personally served Defendant, but argues that it properly served the petition upon Defendant's counsel. Plaintiff contends that the Second Circuit has concluded that a Subway franchisee consents to service of a petition to compel arbitration on his or her counsel by agreeing to arbitrate pursuant to the American Arbitration Association's Commercial Arbitration Rules ("AAA Rules"). "When a party agrees to arbitrate in a state where the Federal Arbitration Act makes such agreements specifically enforceable, that party must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in that state. To hold otherwise would be to render the arbitration clause a nullity." Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 979 (2d Cir. 1996). The franchise agreement in this case specifically incorporates the AAA rules. Accordingly, Defendant's claim on this issue is unpersuasive.

Defendant also claims that the Court lacks jurisdiction over the case because he does not have sufficient minimum contacts with Connecticut to justify the Court's exercise of personal

jurisdiction. Because, as discussed above, the Court concludes that Defendant's claims in the state court of Louisiana arise out of the arbitration agreement over which the Court has jurisdiction, Defendant's claims regarding his lack of minimum contacts or purposeful availment of the privileges or benefits of the state of Connecticut are without merit.

**C.     Order for Injunction**

The Court, having heard the parties, having granted the Petition to Compel Arbitration under Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, and having determined that DAI's arbitration rights will suffer immediate, substantial and irreparable harm if defendant's action in the Ninth Judicial District Court for Rapides Parish, Louisiana is not enjoined, it is hereby

ORDERED that defendant, his agents, attorneys, servants and employees, and all other persons in active concert or participation with him, is enjoined from prosecuting the removed federal court action pending in the Ninth Judicial District Court for Rapides Parish, Louisiana, entitled <u>Suresh Agrawal v. Doctor's Associate's Inc. D/B/A Subway, et al.</u>, Docket No. 216,245 C, and <u>Suresh Agrawal v. Doctor's Associates Inc., Subway Real Estate Corp., and Matthew Hughes</u>, Docket No. 222,684 D, until further order of this Court; and it is further:

ORDERED no bond shall be required in the circumstances of this case.

SO ORDERED.

Dated at New Haven, Connecticut, April  13 , 2006.

                                                                    /s/
                                                            Peter C. Dorsey
                                                       United States District Judge